## Steed *vs.* Cruise *et al.*

1. Where a petition for year's support was a necessary part of the evidence in a case, and on the trial a motion was made to continue the case in order that a copy of the petition might be established, the original being lost, and no reason for delaying to establish such copy was shown, the motion was properly overruled.

(*a.*) Nor was it the duty of the judge to suspend the case and sign a rule *nisi* to establish the paper because the ordinary was disqualified from acting by reason of being counsel in the case. Had the rule *nisi* been signed, it would not have required a continuance or accounted for the delay in preparing the case for trial.

(*b.*) The defendant cannot complain that he was allowed to prove by parol, if he could, the contents of the lost paper.

2. When ejectment was brought against the grantee of a deed, and his warrantor, though not nominally a party, employed counsel to defend the case and placed in his hands a deed to be used in the litigation, such paper was legally in the custody and under the power and control of the warrantor, and its production was properly required under a *subpœna duces tecum* served on him.

3. If it were error to admit a deed in this case because it was neither stamped nor recorded, such error did no harm, because the deed was subsequently withdrawn by the party introducing it from the consideration of the jury. Besides, both parties claimed under it; it was drawn from the custody of defendant's counsel, was a link in defendant's chain of title, and was not, in fact, essential to plaintiff's claim.

4. Complaint is made of the rejection from evidence of a power of attorney, upon objection by counsel, without stating what the objection was. It is incumbent upon the plaintiff in error to show affirmatively the error complained of, or it will not be considered by this court. Upon looking into the record, however, a good reason appears for rejecting the evidence.

5. A mere general statement that the court overruled an objection to certain testimony, without stating what the objection was, furnishes no ground for a reversal.

6. Where land has been properly set apart as a year's support for a widow and her minor children, a sale thereof fairly made by the widow for the purpose of obtaining means to support the family, would pass the title to the purchaser, irrespective of any order of the ordinary; and it is at least questionable whether the ordinary has jurisdiction to order such a sale. Therefore, a request to charge to the effect that the order of the ordinary appointing appraisers to set aside a year's support was their authority to act, and that this, coupled with an order to sell the property so set

apart, raised a conclusive presumption that the ordinary had observed all previous requisitions of law as to setting apart the year's support, and that this precluded the plaintiff from going behind the order to sell and attacking the previous proceedings, was properly refused.

(a.) Besides, this request was based on a partial view of the testimony, and excluded from the consideration of the jury the important issue, whether or not the order for sale was fairly obtained.

7. The charge of the court fully and fairly submitted to the jury whether or not the essential provisions of law for obtaining a year's support had been complied with; and a careful inspection of this record shows that not one of these requirements was fully or substantially followed in this proceeding.

8. The verdict is not contrary to law, evidence or equity.

9. Suit having been brought for land by nine co-plaintiffs, and a verdict having been returned in favor of some of them, no point having been made in the court below, or in the bill of exceptions, that the verdict was for one share too many, it cannot be raised here for the first time.

(a.) A verdict may be amended so as to make it conform to the declaration whenever the error plainly appears upon the face of the record; or, if a part be legal and a part illegal, the court will construe it and order an amendment by entering a remitter as to that part which is illegal, and giving judgment for the balance, to avoid a protraction of contests. Verdicts must have a reasonable construction and intendment, and are not to be avoided except from necessity.

April 17, 1883.

Continuance. Lost Papers. Laches. Subpœna. Witness. Evidence. Practice in Supreme Court. Year's. Support. Ordinary. Charge of Court. Verdict. Before. Judge HARRIS. Douglas Superior Court. July Term, 1882.

Nine Cruises and one Gentry brought complaint for sixty acres of land against Steed. The abstract of title attached to the declaration consisted of a deed from one Attaway to Joseph Cruise "made in the year 1862, 1863 or 1864," with seven years' possession by Cruise or those holding under him, and the statement that Cruise having died, plaintiffs were his heirs at law. Defendant pleaded the general issue.

On the trial the evidence for the plaintiffs was, in brief, as follows: Attaway, by deed dated July 23, 1863, conveyed to Cruise lot No. 73 in Campbell county, containing 405 acres, more or less. Cruise went into possession and died June 1, 1865, leaving a widow and nine children. The ages of these children were stated June 7, 1881, and were respectively as follows: 38, 36 or 37, 33, 31, 27, 24, 22, 18, 17. He had been in possession two or three years before his death, and afterwards his wife and children remained in possession until the fall of 1870. They moved off the land in 1866, but were in possession by tenants up to 1871, when the widow made some kind of disposition of the property. One Morris placed a tenant in possession in 1872. Steed, the defendant, went into possession in 1876, and has since remained so. He was in possession of the sixty acres in dispute at the time suit was brought. One of the children swore that he knew nothing about the sale by the widow, the setting apart of the year's support except what he had heard. (As to this the evidence was conflicting).

The evidence on behalf of the defendant was, in brief, as follows: In 1871, appraisers were appointed who set apart lot number 73 as a year's support for the benefit of the widow and children. The original application appears to have been lost, and there is some confusion in regard to the proceedings, but it was shown by parol that the application was made for Mrs. Cruise by one Watson, and that under this application the year's support had been set apart; no record of the proceedings could be found in the ordinary's office; nor could any of the original papers at first be found; subsequently an order dated "February term, 1871," appointing five appraisers to set apart a year's support, and a return by such appraisers, setting apart lot number 73, was found in that office; and about the time of the trial a record of the order appointing appraisers was found in a book in the office of the clerk of the superior court, the front part of which had been writ-

Steed vs. Cruise et al.

ten by the ordinary and the balance used by the clerk for deeds.

Copies of the order and return (made by Watson and the former ordinary) were also introduced, indicating that the appraisers qualified and made a return March 21, 1871, and their return was ordered to record on September 21, 1871. It was sworn that there was no representation of the estate of Cruise in Douglas or Campbell counties; that by reason of the refusal of some of the appraisers to act, a second order was necessary; that subsequently, Watson still acting, a petition was filed to allow the sale of the land, which was granted, and after advertisement, the property was sold before the court-house door and was bought by one Morris, who allowed Watson to take a half interest. Mrs. Cruise made a deed, dated July 3, 1872, to Watson and Morris. In it she styles herself "guardian of the minor children of Joseph Cruise, late of Campbell county;" recites an order of the court of ordinary allowing the sale of the property for the year's support of the widow and minor children, granted December 13, 1871, the advertisement of the property, the sale in front of the court-house door for $230, and conveys lot number 73. Morris and Watson held until 1876, when they sold the property in dispute to Steed, who gave $300 for it, bought without notice of any claim of the plaintiffs, and erected valuable improvements.

The jury found for the plaintiffs five-ninths of four-fifths of the land. Defendant moved for a new trial on the following grounds:

(1.) Because the court refused to grant a continuance and to sign a rule *nisi* for the purpose of establishing a copy of the petition for year's support, the original having been lost, and the ordinary declining to act in the matter, because he was of counsel in the case. The court held that the contents of the lost paper could be proved by parol, and ordered the case to proceed.

(2.) Because the court required the deed from Attaway

v 70—12

to Cruise·to be produced under a *subpœna duces tecum* served on Watson. [It appeared from the testimony of Watson and J. S. James, Esq., that the former, being the warrantor of Steed, agreed to pay the attorney's fee for representing the case; that Mr. James was thus employed and represented Steed in his defense, Watson not being a party in the record, but looked to Watson for his fees; that he called upon Watson and obtained the Attaway deed as one of the papers relating to the case; that after this a *subpœna duces tecum* was served upon Watson, who showed it to James, and that James had the deed at the time of the trial. The court ordered it to be produced.]

(3.) Because the court admitted in evidence the Atta-way deed over objection of defendant on the ground·that it had not been stamped or recorded in Douglas county, and after defendant had closed, plaintiff withdrew the deed from evidence.

(4.) Because the court ruled out on objection, a power of attorney made by Mrs. Cruise to Watson, authorizing him to apply for a year's support for herself and her children.

(5.) Because the court overruled the objection of defendant's counsel to the introduction of the order of the ordinary dated February Term, 1871, of the appointment of appraisers, the oath of appraisers thereunder, and a return made by Watson, attorney in fact of Mrs. Cruise, to the ordinary, showing the sale of the lot, " the same being shown to be made for the guidance of the commissioners, and all in the hand-writing of the ordinary."

[The ordinary who granted this order, testified as follows: " Watson applied to him for the appointment of appraisers, and then there was something that required another order. Watson went to Buchanan, an attorney, and another order was passed. There was some necessity for another order. It may have been because some of the appraisers refused to act. Anyway it was required; and then witness wrote a form for the· return to be made by, and dated it at any date that occurred to him. The order,

was apparently signed February Term, 1871; that is per-
haps the wrong date, for it is witness's certain recollection
that the qualification was in March, 1871; does not remem-
ber the date; anyway, the papers introduced by the plain-
tiff of the order dated February Term, 1871, have nothing
to do with the case. After the granting of the second
order, the first papers were considered as nothing, the new
supplanting them, but the old papers were left in the
office."]

(6.) [Blank in the record.]

(7.) Because the court refused to give the following
request: "The order of the ordinary appointing appraisers
to set apart a year's support for the widow and minor
children is the authority of the appraisers to set the same
aside. And the ordinary may grant an order to sell the
property. The authority for the setting apart and the
authority for the sale of the land by the widow being
shown, the law presumed the court of ordinary required
all the law required to be done before granting the order
to sell, and you cannot go behind that judgment to inquire
into the legality of the order appointing appraisers and
selling the land. You will determine from the evidence
whether there was an order of the ordinary appointing
appraisers and for selling the land granted."

(8.) Because the court charged as follows: "The appli-
cation of a widow to the ordinary, for twelve months' sup-
port out of the estate of her deceased husband, should be
made in writing, and notice given to the representative of
the estate, if there be one, stating the grounds of such ap-
plication of the order sought; and the order of the ordinary
should always recite the names of the persons notified, the
compliance with the permission required. And it is in-
cumbent upon the defendant to show affirmatively that
there was a petition in writing filed by the widow for the
appointment of the appraisers and in conformity with the
law; if he fail to show this, then the proceedings are

void, and if you so believe, you should find for the plaintiff, so far as this branch of the defence is concerned."

(9.) Because the court charged as follows: "It shall be. the duty of the appraisers to make a schedule of the property set apart by them, and return the same under their hand and seal within three months from the date of their action, to which return objection may be filed by any person interested at any time within six months after filing the same in office, and if no objection is made, or if made and disallowed, the ordinary shall record the return: in a book to be kept for this purpose. I charge you that if the return was not made by the appraisers and not returned to the ordinary within three months from the date of their action and if not recorded, or if you should believe that the ordinary passed an order for the sale of the property within six months of the date of the order appointing. the appraisers, then I charge you that the proceedings are void and you should find for the plaintiff, so far as this branch of the case is concerned."

(10), (11), (12.) Because the verdict is contrary to law,, evidence and equity.

The motion was overruled and defendant excepted.

T. W. LATHAM, for plaintiff in error.

P. H. BREWSTER, for defendants.

HALL, Justice.

This confused, blotted and irregular transcript of the record, has puzzled us no little in ascertaining the facts it is alleged to contain. We shall, however, take the grounds for a new trial in the order set forth, hoping rather than feeling an assurance that we clearly understand the circumstances on which they rest.

1. We see no error in refusing to continue the case to enable the defendant to establish a copy of the petition filed on behalf of the widow for a year's support of herself

·and her minor children. This matter should not have been ·deferred until the case was called for trial, or at least, if it had been deferred until that time, some reason should have been given for the delay; and that, so far as we can discover, was not done. Neither do we understand that it was the duty of the judge to suspend the case and sign a rule *nisi* to establish the paper, because the ordinary was ·disqualified to act, being of counsel in the case; and if the rule *nisi* had been then signed, it is not clear to us that it would have strengthened the showing for a continuance, ·or in any manner have accounted for the delay in prepar· ·ing the case for trial. The plaintiff in error (defendant below), cannot complain that he was allowed to prove by ·parol, if he could, the contents of the lost petition.

2. There was no error in compelling the production of ·the Attaway deed for the land in question to plaintiff's father. A *subpœna duces tecum* had been served on Watson, who was not nominally a party to the suit, though he was the warrantor of the defendant's title, and had employed the counsel in the case to defend that title, in whose hands he had placed the deed to be used on the trial the ·deed, though actually in the hands of the attorney, was ·legally in the custody, and under the power and control, ·of the party subpœnaed to produce it. To have excused himself from the penalty of disobedience to the mandate of the subpœna, he had either to produce the paper, or to ·swear that it "was not then in his power, custody, posses· ·sion, or control, and was not at the time of serving the ·subpœna." Code, §3515.

3. If it was error, under the circumstances, to admit the ·deed from Attaway in evidence, because it was neither ·stamped nor recorded, it was error that did not hurt, be· ·cause it was, subsequently to its admission, withdrawn by the plaintiff from the consideration of the jury as evidence. Besides, both parties claimed under this deed, and it was drawn from the custody of defendant's counsel, who ·had it to sustain the title he set up. He relied upon it as a

link in his chain of title, and it did not lie in his mouth to impeach it. The plaintiffs really had no use for it; it was sufficient for their purposes to show that their father was in possession of the land at his death, and that they succeeded to the same as his heirs.

4. The next ground of the motion for a new trial complains of the rejection of the power of attorney from Martha Cruise to J. P. Watson, upon objection by plaintiffs' counsel, without stating what the objection was. It is incumbent upon the plaintiff in error to show affirmatively the error complained of, or it will not be considered by this court. Upon looking into the record, however, we discover a good reason for rejecting this evidence. There was no evidence of the execution of the paper, and no offer was made to establish the fact by either of the two subscribing witnesses, nor was any foundation, laid in the absence of these subscribing witnesses so as to authorize the introduction of other evidence to prove the execution of the paper.

5. The complaint in the next ground of the motion is, that the court overruled defendant's objection to the admission of certain testimony, without stating what the objection was. The omission to specify this, is fatal. That a general objection need not be noticed and acted upon by the court below, has been so frequently ruled by this court that we weary of the repetition of the rule.

6. The 6th ground of the motion for a new trial was not certified by the judge, and was abandoned here; and the seventh ground complains of his refusal to charge as requested in writing by the defendant, the substance of the request being, that the order of the ordinary appointing appraisers to set apart a year's support for the widow and minor children is their authority to act in this matter; that this, coupled with an order to sell the property so set apart, raised a conclusive presumption that the ordinary, in passing this order to sell, had observed all the previous requisitions of the law as to setting apart the

year's support; and that this presumption precluded the plaintiffs from going behind this order to sell, to attack the previous proceedings. This request was properly rejected, for it is, to say the least, questionable if the ordinary had jurisdiction to order the sale; because the sale, if fairly made by the widow for the purpose of obtaining means to support the family, would have passed the title to the purchaser, irrespective of such order. *Tabb et al. vs. Collier*, February Term, 1882.* *Doe, ex dem. Miller et al. vs. Roe & Monroe*, 50 *Ga.*, 566.

Apart from this, the request is based upon a partial view of the testimony, and excluded from the consideration of the jury the important issue made, whether or not the order for sale was fairly obtained; whether it was the act of the widow, or of Watson, who assumed to act as her agent throughout the entire transaction, and who, while thus acting as her agent, became the purchaser of the property, as it is alleged, and as is supported by some testimony, at less than one-third of its value.

7. The exceptions to the charge of the court, as set out in the 8th and 9th grounds of the motion for new trial (which, as they relate to the same subject, we will consider together), are not, in our opinion, well taken. The charge fairly and fully submitted to the jury whether the application for the twelve months' support was made in writing to the ordinary by the widow, upon a proper compliance with the statute as to notice; whether appraisers were appointed in conformity thereto; whether, acting under such appointment, the appraisers had made return of the property thus set apart within the time prescribed by law; and whether the return was recorded, as required, after remaining in the ordinary's office the prescribed length of time, without objection filed by creditors and others; or if such objections had been filed, the same were overruled; and in instructing them that a failure in these respects rendered the proceeding invalid. Code, 2571, 2573. The attention of the jury was directed

*68 *Ga*, 641.

by these charges to every essential provision of law for obtaining this allowance, as appears from the above cited sections of the Code; and a careful inspection of this record satisfies us that not one of these requirements was fully or substantially followed in this proceeding. If more specific instructions had been desired by the defendant, he should have requested them in writing. His failure to do so cannot operate to the prejudice of the plaintiffs.

8. As to the 10th, 11th and 12th grounds of the motion for a new trial, that the verdict is contrary to law, to the equity and justice of the case, contrary to evidence, etc., we can only say, that it appears to us, that it is in accordance with each and every of them.

9. The point was not made or insisted upon in the court below, though it is urged here, that the verdict is too uncertain to render any judgment thereon, for the reason that there is a finding in favor of Jackson Cruise, when the evidence and record show that Jackson Cruise was not an heir of the intestate and not a party to the suit; there was a finding in favor of five of the nine children, and the insertion of Jackson Cruise's name in the verdict would make the finding in favor of six, contrary to the plainly expressed purpose of the jury. However this may be, the question is not before us for determination, because, as we have intimated, it was not passed upon by the court below, and no such question is made by the bill of exceptions. But in order to avoid further litigation and trouble we call attention to the provisions of law for amending verdicts; this may be done so as to make the verdict conform to the declaration whenever the error plainly appears upon the face of the record (Code, §3491); or if a part of it be legal and part illegal, the court will construe it and order an amendment by entering a remitter as to that part which is illegal, and give judgment for the balance. *Ib.*, 3493. That verdicts must, in order to avoid a protraction of the contest, have a reasonable intendment and

receive a reasonable construction, and are not to be avoided except from necessity, is too clear to admit of question or doubt. Code, §3561.

Judgment affirmed.